# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| OMAHA STEAKS INTERNATIONAL, INC., a Nebraska corporation,<br><br>Plaintiff,<br>vs.<br><br>FRONTIER CHOICE STEAKS, LLC, a Mississippi limited liability company, d/b/a OMAHA BEEF SUPPLYING FRONTIER STEAKS, CHAD DAVIS, an individual, and AKIN TERRELL, an individual,<br><br>Defendants. | No. C 13-4095-MWB<br><br>MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION |

_____

This case is before me on the October 24, 2013, Motion For Preliminary Injunction (docket no. 6) by plaintiff Omaha Steaks International, Inc. I heard telephonic oral arguments on the Motion For Preliminary Injunction on December 6, 2013. Omaha Steaks International was represented by Brian T. McKernan of McGrath, North, Mullin & Kratz, P.C., L.L.O., in Omaha, Nebraska. Individual defendants Chad Davis and Akin Terrell appeared *pro se*. Corporate defendant Frontier Choice Steaks, L.L.C., doing business as Omaha Beef Supplying Frontier Steaks, did not appear through counsel, so that it has defaulted on its resistance to the Motion For Preliminary Injunction. *See* Orders (docket nos. 22 and 29). At the oral arguments, I

took judicial notice of Omaha Steaks International's Amended Complaint (docket no. 5) and Exhibits 2 through 5 attached to it.[1]

Omaha Steaks International argues that the Defendants engaged in infringement of its trademarks, and that a preliminary injunction is appropriate to prevent them from doing so during the pendency of this action on its claims of trademark infringement, unfair competition, trademark dilution, false designation of origin, and false or misleading representations of fact under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and unfair competition and trademark infringement under state and common law. The defendants argued that a preliminary injunction is not appropriate, where they have ceased business, they were simply too small to have any impact on a giant business like Omaha Steaks International, and a preliminary injunction should not be used by a large company to prevent competition by a smaller business.

"'A district court has broad discretion when ruling on a request for preliminary injunction, and it will be reversed only for clearly erroneous factual determinations, an error of law, or an abuse of its discretion.'" *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (quoting *Aaron v. Target Corp.*, 357 F.3d 768, 773–74 (8th Cir. 2004)). In this circuit,

---

[1] Although I expressed skepticism at the oral arguments about the sufficiency of declarations or affidavits to support a motion for preliminary injunction, I am now satisfied that a preliminary injunction can be issued on the basis of such evidence. *See Movie Systems, Inc. v. MAD Minneapolis Audio Distributors*, 717 F.2d 427, 432 (8th Cir. 1983) (holding that the district court did not abuse its discretion by granting a preliminary injunction on the basis of affidavits); *Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation*, 507 F.2d 1281, 1287 (8th Cir. 1974) ("In order to overcome the problems that would be created in attempting to gather the necessary witnesses, it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction." (citing cases)).

> Requests for preliminary injunction are analyzed under the four factors set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). The *Dataphase* factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id*. at 114.

*Novus Franchising, Inc.*, 725 F.3d at 893. These *Dataphase* factors are applicable to a request for a preliminary injunction based on trademark or trade dress infringement. *See, e.g., Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999).

As to the first *Dataphase* factor, "a 'failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.'" *Novus Franchising, Inc.*, 725 F.3d at 893 (quoting *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). "[I]n trademark law, injury is presumed once a likelihood of confusion has been established." *Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011). "To determine the likelihood of confusion between the trademarks and the allegedly infringing marks, we consider the following factors set forth in *SquirtCo. v. Seven–Up Co.*[, 628 F.2d 1086 (8th Cir. 1980)]: 1) the strength of the trademark owner's mark; 2) the similarity between the trademark owner's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing services [or products] compete with the trademark owner's services [or products]; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion." *Community of Christ Copyright Corp.*, 634 F.3d at 1009 (citing *Squirt Co.*, 628 F.2d at 1091). The exhibits supporting Omaha Steaks International's Motion For Preliminary Injunction adequately demonstrate a likelihood of confusion of Omaha Steaks International's marks and the Defendants' marks, thus

3

establishing a presumption of irreparable harm, and Omaha Steaks International's evidence of *actual* confusion moves this case beyond a presumption to a demonstration of irreparable harm. For the same reason, Omaha Steaks International has established sufficient likelihood of success on the merits of its trademark infringement claim for preliminary injunction purposes. *See Novus Franchising, Inc.*, 725 F.3d at 893 (third factor).

Also, courts have recognized that, even where a business has ceased operations, a preliminary injunction may be appropriate to prevent a principal or successor of the business from recommencing wrongful conduct. *See, e.g., Schlotsky's, Ltd. v. Sterling Purchasing and Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402-03 (5th Cir. 2008). To the extent that the defendants assert that they have already ceased any infringing activity, they plainly cannot complain that the harm to them of a preliminary injunction outweighs the harm to Omaha Steaks International of not enjoining infringing activity. *See Novus Franchising, Inc.*, 725 F.3d at 893 (second factor). Furthermore, the balance of harms weighs in favor of Omaha Steaks International, where a trademark owner must take action to protect its marks to prevent their dilution or loss of protection, and the preliminary injunction does not enjoin the *operation* of a smaller business to the benefit of a larger competitor, but simply enjoins *the use of infringing marks* by the smaller business. Finally, the public interest, *id.* (fourth factor), is served by protecting the public from confusion arising from trademark infringement. *See Coca-Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004).

I find that the *Dataphase* factors are satisfied in this case and that the issuance of a preliminary injunction is warranted.

As to the amount of any bond to be posted before issuance of a preliminary injunction, *see* FED. R. CIV. P. 65(c), Omaha Steaks International requests a "minimal" security bond of $100.00. The bond required must be sufficient to protect the enjoined party from potential loss if the preliminary injunction was improperly granted. *See*

*Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). A district court may properly consider whether the risk of harm is remote when setting the amount of the bond. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 745 (8th Cir. 2002). I conclude that here, where the defendants' potential losses as a result of an improperly granted preliminary injunction are minimal, a bond in a nominal or minimal amount of $100.00 is adequate and sufficient.

UPON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. Defendants Frontier Choice Steaks, L.L.C., d/b/a Omaha Beef Supplying Frontier Steaks, Chad Davis, and Akin Terrell (collectively, the "Defendants"), all of their affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from any of the Defendants, or in concert or participation with the Defendants, are hereby PRELIMINARY ENJOINED from:

    a. using the Trademarks encompassed in U.S. Trademark Registration Nos. 3,768,691 and 3,768,690 HEARTLAND QUALITY OMAHA STEAKS SINCE 1917 and design Registration Nos. 1,458,802; 1,515,602; 1,674,686; and 3,774,260 OMAHA STEAKS (collectively "the OMAHA STEAKS Trademarks"), and any other confusingly similar imitation of the OMAHA STEAKS Trademarks, including, but not limited to, "OMAHA BEEF," in connection with the Defendants' business or products, including but not limited to the advertising of that business or those products, or any other use of the OMAHA STEAKS Trademarks whether as a trade name, service mark, or trademark, and whether alone or in association with other words or symbols; and

    b. using any trademark, service mark, name, logo, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to, the OMAHA

STEAKS Trademarks, or that is likely to cause confusion, mistake, deception, dilution, or public misunderstanding that the Defendants' business or products are the business or products of Omaha Steaks International, or are sponsored by or in any way related to Omaha Steaks International, including, but not limited to, "OMAHA BEEF."

2. Without limiting the foregoing, the Defendants shall immediately

    a. remove completely all internal and external signage used in the Defendants' business and/or vehicles that bear the OMAHA STEAKS Trademarks or any other name or mark that is confusingly similar to the OMAHA STEAKS Trademarks, including, but not limited to, "OMAHA BEEF";

    b. cease use of all advertising and promotional materials, stationary, envelopes, business cards, invoices, fliers, websites, and similar materials bearing the OMAHA STEAKS Trademarks or any other name or mark that is confusingly similar to the OMAHA STEAKS Trademarks, including, but not limited to, "OMAHA BEEF."

3. Within ten (10) business days of the date of this Order, the Defendants shall file with the Clerk of Court written certification of their compliance with the terms of this Order.

4. Plaintiff Omaha Steaks International is hereby required to deposit a cash bond in the amount of $100.00 as security for this Preliminary Injunction.

**IT IS SO ORDERED**.

**DATED** this 10th day of December, 2013.

                                          *Mark W. Bennett*
                                          _____
                                          MARK W. BENNETT
                                          U.S. DISTRICT COURT JUDGE
                                          NORTHERN DISTRICT OF IOWA